**RUSS AUGUST & KABAT**
Marc A. Fenster, CA SBN 181067
mfenster@raklaw.com
Reza Mirzaie, CA SBN 246953
rmirzaie@raklaw.com
Philip X. Wang, CA SBN 262239
pwang@raklaw.com
Kent N. Shum, CA SBN 259189
kshum@raklaw.com
Christian W. Conkle, CA SBN 306374
cconkle@raklaw.com
Minna Y. Chan CA SBN 305941
mchan@raklaw.com
12424 Wilshire Boulevard, 12th Floor
Los Angeles, California 90025
Tele:     310/826-7474
Fax:      310/826-6991

*Attorneys for Plaintiff*
XR COMMUNICATIONS, LLC,
dba VIVATO TECHNOLOGIES

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| XR COMMUNICATIONS, LLC, dba VIVATO TECHNOLOGIES,<br><br>Plaintiff,<br><br>v.<br><br>D-LINK SYSTEMS, INC.,<br><br>*Defendant*. | 8:17-cv-00596-AG(JCGx)<br>LEAD CASE<br><br>**XR COMMUNICATIONS, LLC'S SUPPLEMENTAL BRIEF IN OPPOSITION TO RUCKUS'S MOTION TO DISMISS FOR IMPROPER VENUE [LACV 17-2961 ECF NO. 27]** |

## 1. Ruckus Does Not Dispute That Venue Is Proper If This Court Determines That It Was Brocade's Alter Ego.

Ruckus does not dispute that venue in this District is proper for Brocade. *See, e.g.*, Reply at 4 ("This [Irvine] location…is an office of Ruckus' parent company, Brocade."); Am. Compl. Ex. D; Kording Decl. at 1 (ECF No. 49-6). Nor could it. Brocade's brick-and-mortar Irvine Office was Brocade's regular and established place of business and satisfies all the *Cray* requirements. *See, e.g.*, Kording Decl. at 1 ("I have been an employee of Brocade…since April 2015…I work out of a Brocade office located at 2875 Michelle Drive, Suite 110, Irvine, CA 92606.").

Thus, if this Court determines that Ruckus was Brocade's alter ego, then venue in this District is indisputably proper. To establish venue, Vivato need only make a prima facie showing that Ruckus was Brocade's alter ego when this case was filed. *See Celgard, LLC. v. SK Innovation Co.*, 792 F.3d 1373, 1378 (Fed. Cir. 2015) (holding that only a prima facie showing of alter ego was sufficient where parties do not agree on the facts). Through venue discovery, Vivato has marshalled facts that meet, and exceed, this low burden. *See id.*; *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1161 (5th Cir. 1983) (finding it appropriate to "apply[] a less stringent standard for alter ego jurisdiction than for alter ego liability"); *Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1134-35 (9th Cir. 2003).

## 2. Venue Discovery Confirms That Ruckus Was Brocade's Alter Ego.

"Federal Circuit law, rather than regional circuit law," governs the venue analysis under §1400(b), including subsidiary questions, such as alter ego. *In re Cray*, 871 F.3d 1355, 1360 (Fed. Cir. 2017); *Cooper Lighting, LLC v. Cordelia Lighting, Inc.*, No. 1:16-CV-2669-MHC, at *7 (N.D. Ga. Jan. 25, 2018) (Ex. D). Under that law, one entity is the alter ego of another for venue purposes where "[1] substantial ownership of all the stock of a corporation in a single [entity] is combined with [2] other factors clearly supporting disregard of the corporate fiction on grounds of fundamental equity and fairness." *Minn. Mining & Mfg. Co. v. Eco Chem, Inc.* ("*3M*"), 757 F.2d 1256, 1264 (Fed. Cir. 1985).

### 2.1. *All* Ruckus stock was owned Brocade and, even further, Ruckus lacked a sufficiently distinct corporate personality from Brocade.

In *3M*, the Federal Circuit affirmed the district court's finding of alter ego where the defendants owned eighty percent of the corporation's stock, possessed the corporation's "know-how," and operated the corporation without adhering to corporate formalities such as a board of directors. *3M*, 757 F.2d at 1265.

The alter-ego facts here are much stronger than those in *3M*. At the time of the filing of this case, Brocade had **100% ownership** of Ruckus. Ex. A at 93:3-19. In fact, Ruckus's own press releases and SEC reports described the resulting entity as the "**combined company**" of Ruckus and Brocade. ECF Nos. 44-6–8. Under Brocade's ownership and control, Ruckus did not function as a separate entity. Instead, it functioned as a fully integrated "unit" within Brocade's "Network Edge Business Unit," such that there was a "fluid use of [the names] Brocade and Ruckus Wireless" internally and externally. ECF No. 44-2 at 13:18-24, 87:10-89:16.

Ruckus also did not observe corporate formalities. For instance, Ruckus did not have any directors or a board of directors, and did not hold any board meetings. Ex. A at 87:18-93:1. The "officers" identified on Ruckus's California corporate filing were Brocade executives that held no position within Ruckus. *Id.* at 90:7-91:19; *cf.* ECF No. 44-16. In fact, Ruckus's leader, Dan Rabinovitsj, was a *Brocade* employee who directly reported to Brocade's CEO, and not to any of the purported Ruckus "officers." Ex. A at 91:21-92:4. Brocade even governed the financial policies of Ruckus. *Id.* at 93:3-94:12. Ruckus's financial reporting was done by Brocade employees in Brocade's corporate finance department. *Id.* at 95:6-98:10. In fact, Mr. Rabinovitsj did not know Ruckus's available capital, its assets or liabilities, or its capital requirement. *Id.* at 100:19-101:25.

Further, Brocade possessed all Ruckus "know-how," and Ruckus sales were solely handled by Brocade's "converged sales force." ECF No. 44-2 at 31:21-33:12. Brocade's "converged sales force" sold Brocade and Ruckus products together, and did not report to Mr. Rabinovitsj or anyone under him. *Id.* at 32:2-14, 33:8-34:7.

Despite these overwhelming facts, Ruckus argues that it was separate because it had filed its own corporate statements. Reply 9-10. But those filings listed Brocade executives (without positions within Ruckus) as Ruckus officers. Ruckus also argues that it had its own "marketing organization" and "its own products." Reply at 10. But Brocade's "converged sales force" was the organization responsible for selling and marketing the "Ruckus branded" products. Finally, Ruckus argues that it had its own intellectual property. *Id.* This fact bears no weight. While Ruckus may have had some IP to its name, any separateness is belied by the fact that other IP, such as copyrights to Ruckus press releases, and the "RUCKUS" trademark (among other marks), were owned by Brocade. *See, e.g.*, ECF No. 44-10; Ex. E.

### 2.2. Other factors clearly support disregarding the corporate fiction on grounds of fundamental equity and fairness and, if that fiction is not disregarded, there would be injustice to Vivato.

"Other factors" clearly support disregarding the Ruckus corporate fiction on grounds of fundamental fairness and equity. In fact, if this corporate fiction were not ignored, Vivato would suffer demonstrable injustice and inequities. *3M* is illustrative on this point and shows why alter ego applies here as a matter of law. As Ruckus acknowledged, *3M* found inequity and unfairness when the plaintiff made a prima facie showing that defendants used the corporate distinction to "avoid litigation" or "thwart plaintiff's recovery." Reply 8, 10. That is *precisely what Ruckus is doing*.

As in *3M*, Ruckus purposefully continues to hide behind its corporate fiction to evade venue and liability. Ruckus's counsel admitted that observing Ruckus's corporate fiction may thwart Vivato's recovery altogether because "the named defendant in this lawsuit probably **doesn't exist anymore**." Ex. B at 9:24-10:5 (emphasis added); Ex. C at 1. And Ruckus refuses to allow Vivato to add the new Ruckus entity to this case. Ex. C at 3. Consequently, Vivato has been forced to file *a separate* complaint against the new Ruckus entity, which counsel refuses to accept service for. Ex. F at 1. Further, counsel admitted in open court that "**the truth**" behind Ruckus's venue fight and its desire to be separate from Brocade is to avoid

PLAINTIFF'S SUPPLEMENTAL BRIEF RE MOTION TO DISMISS

litigation. Ex. B at 14:6-16 ("You in the Southern California allow folks to basically in most instances try their cases. I believe Northern California…may be **so less inclined**.") (emphasis added). At the same hearing, counsel also conceded that, far from seeking "justice," Ruckus wants to split up the consolidated cases, which drives up Vivato's costs and wastes judicial resources. *Id.* at 13:25-14:5.

Though these facts alone place this case on all fours with *3M*, there is more. After claiming for months that it had many employees in Northern California, Ruckus now admits that it had no employees of its own *at all*. ECF No. 44-2 at 17:21-18:11. Rather, all persons conducting Ruckus business were *Brocade* employees on Brocade's payroll. *Id.* at 14:24-15:12. Ruckus should not be allowed to argue that all Ruckus personnel are Brocade employees for the purposes of contesting venue while also arguing that these Brocade's contacts are irrelevant to the venue determination. *3M*, 757 F.2d at 1265. That would be directly contrary to the "fundamental equity and fairness" the Federal Circuit tries to maintain in applying alter ego in situations like those present here. *Id.* at 1264.

Moreover, Ruckus's lack of directors and undercapitalization, among other things, also should result in a finding of alter ego because Brocade's control over Ruckus rendered it a mere instrumentality of Brocade. This is another critical point: undercapitalization alone may satisfy the inequitable result prong of the alter-ego test if the complained-of acts (here, patent infringement) are treated as those of the undercapitalized corporation. *Slottow v. Am. Cas. Co.*, 10 F.3d 1355, 1360 (9th Cir. 1993); *RRX Indus., Inc. v. Lab-Con, Inc.*, 772 F.2d 543, 546 (9th Cir. 1985).

Courts have found alter ego in cases where the plaintiff had far fewer facts showing potential inequity, unfairness, or injustice. *See* Opp. at 10-11 (collecting cases) (ECF No. 44). Accordingly, this Court should disregard Ruckus's corporate fiction on grounds of equity and fairness, particularly where, as here, it must draw all reasonable inferences and resolve all factual conflicts in favor of Vivato. *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1138 (9th Cir. 2004).

### 3. Even If Ruckus Is Not Brocade's Alter Ego, Venue Is Proper Because Venue Discovery Confirms That Ruckus's Converged Sales Force Exercises Attributes of Possession Or Control Over The Irvine Office.

If the Court does not find that Ruckus is Brocade's alter ego, the Court nevertheless should find that venue is proper because Ruckus "exercises other attributes of possession or control" over the Irvine Office. *Cray*, 871 F.3d at 1363. For example, Dale Kording, who was a member of the Ruckus "converged sales force," worked out of the Irvine office and "primarily focused on ICX and MLX switching portfolios," which were Ruckus products bearing Ruckus logos. Ex. A at 25:9-16, 40:6-44:22; Kording Decl. at 1. And numerous other facts confirm that Mr. Kording's use, possession, and control of the Irvine Office were "of the Defendant [Ruckus]." *Cray*, 871 F.3d at 1363. Vivato has confirmed that Mr. Kording: (a) conducted Ruckus business; (b) wore a polo shirt with a "Ruckus" logo; (c) possessed Ruckus-branded stationary; and (d) had Ruckus-branded sales samples/inventory at the Irvine Office. ECF No. 44-1 ¶¶ 4-6.

After Vivato discovered these facts, Ruckus immediately distanced itself from Mr. Kording, contending that he was not a Ruckus employee. That argument fails because first, this contention appears to be based on Ruckus's strategy-shift to claim that it really had no employees—contradicting its earlier assertions regarding Ruckus employees in the Northern District. As addressed in Section 2.2 above, Ruckus cannot have it both ways. *3M*, 757 F.2d at 1265. Second, even ignoring Mr. Kording, *other members* of the converged sales force were also based in this District and were able to work from the Irvine Office. Ex. A. at 36:3-15.

Drawing all reasonable inferences and resolving all factual conflicts in favor of Vivato, the Irvine Office was subject to Ruckus's possession and control and was held out as a place for Ruckus's business. This is enough for proper venue, even if Ruckus does not separately pay for use of the Irvine Office. *See In re Cordis Corp.*, 769 F.2d 733, 736 (Fed. Cir. 1985) (finding venue proper even though "Cordis…does not rent or own a fixed physical location within Minnesota.").

5
PLAINTIFF'S SUPPLEMENTAL BRIEF RE MOTION TO DISMISS

RUSS AUGUST & KABAT

Dated: February 5, 2018

By:    */s/ Reza Mirzaie*
     Reza Mirzaie

*Attorneys for Plaintiff*
XR COMMUNICATIONS, LLC dba
VIVATO TECHNOLOGIES

**CERTIFICATE OF SERVICE**

I certify that I caused the foregoing document to be electronically filed with the Clerk of the Court for the United States District Court for the Central District of California using the CM/ECF System on March 2, 2018. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the court's CM/ECF system.

／s／ *Reza Mirzaie*
Reza Mirzaie